FILED

03/23/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 15, 2022

## EUGENE FRANKLIN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County
No. F-75769   Barry R. Tidwell, Judge**

_____

## No. M2021-00367-CCA-R3-PC

_____

Petitioner, Eugene Franklin, appeals from the denial of his petition for post-conviction relief challenging his convictions upon his guilty pleas to two counts of aggravated sexual battery, for which he received consecutive eight-year sentences resulting in an effective 16-year sentence. Petitioner contends that the post-conviction court erred by finding that he received the effective assistance of counsel and that his guilty pleas were knowingly and voluntarily entered. Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Benjamin Lewis, Murfreesboro, Tennessee, for the appellant, Eugene Franklin.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual and Procedural Background*

At the July 11, 2017 guilty plea submission hearing, the State gave the following factual basis for Petitioner's guilty pleas:

The proof would be that on June the 2nd, 2016, [Petitioner] was at a residence that he shared with his girlfriend, [E.J.][1], and her then 13[-]year[-]old daughter.

[E.J.] had actually gone to Nashville for a concert, and the 13[-]year[-]old's maternal grandmother stopped by the house. She was trying to locate the 13[-]year[-]old. Could not find her.

Came to learn that she was locked in a bedroom with [Petitioner] who took a long time to actually open the door and allow entry.

Upon entry, the grandmother saw that [Petitioner] was naked, but for being wrapped in a blanket. And she began questioning him, which resulted in a police investigation.

During that investigation, detectives with the Murfreesboro Police Department questioned [Petitioner] about his contact with the victim, who would ultimately disclose that the inappropriate touching of her private areas had been going on for the last two years.

When the police questioned [Petitioner], he eventually did admit that his, what he termed his step daughter, performed oral sex on him. And that it had – he had been receiving oral sex from her for the past two years and estimated it happened 10 different times.

Upon questioning by the trial court, Petitioner acknowledged under oath that the State's recitation of facts was true. Petitioner stated that he understood the negotiated plea agreement. He stated that he understood the range of punishment for the offenses charged. He affirmed that he understood he was waiving his rights to a speedy public trial by a jury, to call witnesses on his behalf, to compel the production of favorable evidence; to have an attorney represent him at all stages of the proceedings, to cross-examine the State's witnesses; to remain silent; and to appeal his convictions.

The trial court explained that Petitioner would serve 100 percent of his sentence, and Petitioner stated that he understood. Petitioner affirmed that his trial counsel had reviewed with him the State's evidence against him and discussed any possible defenses. Petitioner stated that he was satisfied with his counsel's representation.

---

[1] It is the policy of this Court to protect the identities of minor victims and victims of sex offenses. We will use the initials of the victim's mother in order to protect the victim's identity.

In his pro se post-conviction petition, Petitioner alleged:

I am illiterate. I have had to request help with the Petition. I met with my lawyer about five times. I maintained my innocence, but he insisted I plead guilty. I told him I cannot read but he refused to read me any documents. I finally agreed to take the plea because he yelled at me and I was scared of him. I still want to go to trial.

Petitioner filed an amended petition through appointed counsel, alleging that his guilty plea was involuntarily and unknowingly entered because he is illiterate and uneducated. Petitioner claimed that he "was unable to understand his attorney's explanation of what he was agreeing to." Petitioner alleged that his trial counsel was ineffective because he "refused to read [Petitioner] any documents" and he "pressured Petitioner into signing the paperwork." Petitioner claimed that trial counsel "raised his voice at Petitioner out of frustration on numerous occasions and intimidated Petitioner into signing the plea and judgment paperwork, despite Petitioner's inability to understand the charges against him."

### Post-Conviction Hearing

Petitioner testified at the post-conviction hearing. He testified, "I think I pled guilty to something I didn't understand really." He testified that "[t]hey tried to charge [him] for rape. But [he] didn't never rape nobody." Petitioner believed that he pleaded guilty to aggravated assault. Petitioner testified that he did not understand the trial court's questions to him and he tried to convey that to his trial counsel. He testified,

I didn't understand the question. I kept on asking him. I told him I didn't understand. I didn't understand. And my sister told me to tell him I didn't understand the question. I kept telling him I did not understand the question.

He kept telling me, I do, I do, I do. I do not understand no question at all.

Petitioner testified that he could not read or write. He attended high school through twelfth grade but did not graduate. He was in special education classes. Petitioner had another inmate write his pro se petition for him. Petitioner acknowledged that trial counsel read the plea agreement to him, but Petitioner did not understand it. Petitioner testified, "I didn't understand the question, and [trial counsel] raised his voice at me." Petitioner maintained that he was innocent of the charges against him. Petitioner testified that he felt he did not have any choice but to plead guilty because a jury would have believed the victim's grandmother over him. Petitioner denied that he admitted to detectives that the victim had performed oral sex on him. He testified that he told police he "didn't do nothing

- 3 -

wrong. . . ." Petitioner estimated that he met with trial counsel five times in court and that trial counsel visited him four times in jail.

On cross-examination, Petitioner testified that he was convicted of a drug offense in 2003 and that he pleaded guilty to that offense because he was "nobody's snitch." In 2010, Petitioner entered a guilty plea to a "gun charge." Petitioner denied that he was guilty of either of those offenses. Petitioner acknowledged that he was charged with three counts of rape of a child and that the offense carries a mandatory minimum sentence of 25 years to be served at 100 percent. Petitioner acknowledged that he answered the trial court's questions at the plea colloquy in the affirmative. He testified that trial counsel "hollered at [him]" and told him to "answer the question." Petitioner testified that he did not understand the questions and that he "answer[ed] the best way [he] kn[e]w how."

Trial counsel testified that he had been an assistant district public defender for 19 years. He testified that there was a recording of Petitioner's interview with police in which Petitioner made incriminating statements. Trial counsel testified that Petitioner was never aggressive toward him and they "never had a situation where he argued or anyone was yelling at anyone or anything like that." He testified, "I can say without a doubt that there was never a situation where I raised my voice to [Petitioner] or where I tried to intimidate him or tried to push him one way or the other."

Trial counsel could not recall whether Petitioner informed him that he was illiterate. He testified that it was his usual practice to read and explain documents to clients if they indicated that they did not understand. Trial counsel never had "any indication that [Petitioner] didn't understand what he was doing." Trial counsel testified that Petitioner "was very clear on what he was charged with. He was very clear on the facts. He was very clear on what the State had to present against him." Trial counsel agreed with Petitioner's estimation that he met with him to discuss his case on approximately nine occasions.

In a written order denying relief, the post-conviction court found trial counsel's testimony credible. The court found Petitioner's testimony as to his inability to understand the plea agreement because of his illiteracy not credible because "Petitioner was verbally informed about the consequences of entering into a plea agreement by the Court." The post-conviction court noted that Petitioner responded affirmatively to a series of questions by the trial court during the plea colloquy pertaining to the voluntariness of Petitioner's plea and Petitioner stated that he was satisfied with trial counsel's representation.

Petitioner timely appeals the post-conviction court's order.

***Analysis***

- 4 -

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id*. § 40-30-110(f). A post-conviction court's findings of fact are binding on appeal, and this Court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

Petitioner contends that the post-conviction court erred by denying relief because his guilty plea was involuntarily and unknowingly entered. He asserts that he did not understand his plea agreement because he was illiterate and trial counsel provided ineffective assistance by refusing to read or explain it to him. The State responds that the post-conviction court did not err by denying relief. We agree with the State.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that

the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The record reflects that Petitioner entered a knowing, intelligent, and voluntary guilty plea. The guilty plea hearing transcript reflects that, upon questioning by the trial court, Petitioner acknowledged under oath that he agreed to the factual basis for the conviction as outlined in the State's recitation of the facts. Petitioner did not express any concern about trial counsel's competence and did not inform the trial court that he was illiterate or did not understand any part of the plea agreement. Petitioner told the court that he understood the plea agreement and the rights he waived by pleading guilty, that he was satisfied with counsel's performance, and that he was pleading guilty voluntarily. The post-conviction court accredited trial counsel's testimony and found Petitioner's post-conviction testimony regarding his understanding of the consequences of his guilty plea not credible, citing Petitioner's testimony at the guilty plea hearing. We conclude that the evidence does not preponderate against any of the post-conviction court's findings. Accordingly, Petitioner is not entitled to relief.

CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE